IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 9, 2016

**STATE OF TENNESSEE v. JOHNNY MALCOLM VINSON**

**Appeal from the Criminal Court for Davidson County**
**No. 2014-B-1570    Mark J. Fishburn, Judge**

_____

**No. M2016-00068-CCA-R3-CD – Filed September 27, 2016**

_____

The defendant, Johnny Malcolm Vinson, was convicted of aggravated assault in violation of an active order of protection pursuant to Tenn. Code Ann. § 39-13-102(c). On appeal, the defendant challenges the sufficiency of the evidence supporting his conviction arguing that conflicting testimony exists regarding his use of a deadly weapon and that the State failed to prove he acted with intent. After our review, we conclude that the defendant's arguments are without merit. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT H. MONTGOMERY, Jr., J., joined.

Nick McGregor, Nashville, Tennessee (at trial and on appeal), for the appellant, Johnny Malcolm Vinson.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Glenn Funk, District Attorney General; and Jan Norman and Tali Rosenblum, Assistant District Attorney Generals, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This case stems from the defendant's violation of an order of protection entered against him by his estranged wife, Angel Pack. On November 27, 2013, Ms. Pack

obtained an order of protection against the defendant. The order prohibited the defendant from contacting, abusing, or threatening Ms. Pack. At the time the order was obtained, Ms. Pack ran a concession stand at Gibbs Auction House in Nashville, Tennessee. While the order permitted the defendant to go to the auction house, it prohibited him from approaching the concession stand.

The evidence produced at trial revealed that on December 14, 2013, Ms. Pack was working behind the concession stand when the defendant entered the auction house. Upon entry, the defendant looked directly at her and pulled a taser out of his pocket. Ms. Pack described the defendant's look as blank and scary. She recognized the taser as one the defendant purchased during their marriage in order to "control" her.[1] Ms. Pack believed the defendant was going to shoot her with the taser. As a result, she felt uncomfortable, scared, and intimidated. She immediately called the police, and the defendant fled the scene.

Terry Matthews testified that he was standing in front of the concession stand facing Ms. Pack when the defendant entered the auction house behind him. He saw Ms. Pack's eyes widen. However, when Mr. Matthews turned towards the defendant, he did not see a taser.

Officers Paul Goebel and James Tucker responded to Ms. Pack's call within minutes. Officer Tucker interviewed Ms. Pack at the scene, while Officer Goebel pursued the defendant by car. Ms. Pack told Officer Tucker that the defendant had a taser with him and that she had an active order of protection against him. Officer Tucker verified the order of protection with the Sheriff's Department. He then relayed the information about the taser and the order to Officer Goebel.

Officer Goebel stopped the defendant shortly after he fled the scene. He found a taser in the center console of the defendant's car, and he questioned the defendant about the order of protection. The defendant stated he was allowed to be at Gibbs Auction House under the order. However, based upon his actions at the auction house, Officer Goebel arrested the defendant for the aggravated assault of Ms. Pack.

Nathaniel Ellsworth, a domestic violence detective, took photographs of the auction house and concession stand. The photographs showed that Ms. Pack would not have been able to leave the concession stand or the auction house without passing by the defendant at the time of the assault.

---

[1]After Ms. Pack testified, the trial court instructed the jury to only consider the testimony regarding the taser in establishing whether or not it provided circumstantial evidence of the defendant's mental state at the time he entered the auction house on December 14, 2013.

The parties stipulated at trial that the order of protection was in effect on December 14, 2013. According to the appellate record, the defense did not put on any proof. On April 6, 2015, the jury convicted the defendant of the aggravated assault of Ms. Pack under Tenn. Code Ann. § 39-13-102 (c). A sentencing hearing was held on October 7, 2015.[2] The trial court sentenced the defendant to ten years for aggravated assault as a Range III, persistent offender, to be served at forty-five percent. On December 9, 2015, the trial court denied the defendant's motion for a new trial. This appeal followed.

On appeal, the defendant challenges the sufficiency of the evidence to support his conviction for the aggravated assault of Ms. Pack. The defendant argues the State failed to prove he had threatened her with a taser or that he intended to cause the victim to reasonably fear imminent bodily injury. He also argues the conviction "is based on prejudicial testimony that conflicts with the [S]tate's only eyewitness." The State contends sufficient evidence exists to support the defendant's aggravated assault conviction and that any conflicts in testimony were resolved by the jury's verdict. After our review, we agree with the State.

## ANALYSIS

The defendant argues that the evidence produced at trial is insufficient to support his aggravated assault conviction. When the sufficiency of the evidence is challenged, appellate courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans,* 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson,* 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). Appellate courts "do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state." *State v. Adams*, 45 S.W.3d 46, 55 (Tenn. Crim. App. 2000) (citing *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978)). As a result, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State." *State v. Thorpe*,

---

[2]At the time of the April 6, 2015 conviction, the defendant had another trial pending. The defendant requested a merged sentencing hearing after the completion of both trials. As a result, his sentencing hearing for the present conviction was delayed until October.

463 S.W.3d 851, 864 (Tenn. 2015) (quoting *State v. Harris,* 839 S.W.2d 54, 75 (Tenn. 1992)).

Further, "[a] jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982). The Tennessee Supreme Court explained as follows:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State,* 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State,* 370 S.W.2d 523 (1963)). On appeal, "conflicts in the testimony are resolved in favor of the verdict of the jury and the judgment of the trial court, and the state is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *Tuggle*, 639 S.W.2d at 914 (citing *Cabbage,* 571 S.W.2d 832).

As charged in count two of the indictment, aggravated assault is committed when the defendant commits an assault in violation of a court order that prohibits him from causing, or attempting to cause, bodily injury to the assault victim. Tenn. Code Ann. § 39-13-102 (c). The defendant has committed an assault when he "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101 (a)(2).

Initially, the defendant argues conflicting testimony exists as to whether he used a taser to threaten the victim. Mr. Matthews testified he did not see the defendant with a taser at the auction house. However, the victim testified that she not only saw the defendant pull a taser out of his pocket, but she also recognized the taser as one the defendant purchased while they were married in order to "control her." The police later found a taser in the defendant's car. This Court presumes that any conflicts in Mr. Matthews and the victim's testimony were resolved by the jury in reaching their verdict. *See Campbell,* 245 S.W.3d at 335; *Adams*, 45 S.W.3d at 55.

The defendant also contends the State failed to prove the elements of aggravated assault beyond a reasonable doubt. More specifically, the defendant argues that the State failed to prove that the victim reasonably feared imminent bodily injury. However, the

evidence produced at trial showed that on December 14, 2013, the defendant came to the auction house, stopped in front of the concession stand where the victim was working, made eye contact with her, and pulled a taser out of his pocket. The victim feared the taser because the defendant purchased it "to control her." She testified that she was uncomfortable and frightened. The victim immediately called the police and the defendant fled the scene. An officer found a taser in the defendant's car shortly after the incident. The parties stipulated that an order of protection was in effect prohibiting the defendant from approaching the concession stand or threatening the victim. Based upon the evidence outlined above, the State proved the essential elements of aggravated assault as charged in the indictment by showing that the defendant violated an active order of protection when he threatened the victim at the auction house on December 14, 2013. Accordingly, the defendant's arguments regarding conflicting testimony as to whether a taser was involved in the incident are without merit. The evidence is sufficient to support the defendant's conviction.

Finally, the defendant complains that the trial court erroneously allowed the victim to explain why she was frightened by the taser. The defendant argues he was prejudiced by the victim's testimony that she feared the taser because the defendant purchased it during their marriage "to control her." We disagree. The trial court properly determined that the victim's testimony about her familiarity with the taser was relevant to establishing the defendant's mens rea at the time of the assault. Tenn. R. Evid. 403. The court stated the defendant's action in purchasing the taser was "indicative of what his intent was on that day and that [was] to control her, which would be an obvious violation of the order of protection." The trial court further reasoned that the defendant would not be prejudiced by the victim's testimony as the parties stipulated, and the jury knew, that an order of protection was in place at the time of the assault. Further, the trial court instructed the jury that it was only to consider the victim's taser testimony in establishing the defendant's mental state at the time of the assault. This Court presumes the jury followed the trial court's instructions. *State v. Joshua R. Starner*, No. M2014-01690-CCA-R3-CD, 2016 WL 1620778, at *21 (Tenn. Crim. App. Apr. 20, 2016) (citing *State v. Young,* 196 S.W.3d 85, 111 (Tenn. 2006); *State v. Shaw,* 37 S.W.3d 900, 904 (Tenn. 2001)). We find the defendant's prejudice argument is without merit.

After reviewing the evidence in the light most favorable to the prosecution, we hold that the proof presented at trial was sufficient for a rational trier of fact to find the defendant committed the aggravated assault of Ms. Pack beyond a reasonable doubt.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____

J. ROSS DYER, JUDGE