IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 7, 2008

**STATE OF TENNESSEE v. KENNETH L. DAVIS**

**Appeal from the Circuit Court for Madison County**
**No. 07-295      Donald H. Allen, Judge**

**No. W2008-00226-CCA-R3-CD  - Filed January 23, 2009**

The Defendant, Kenneth L. Davis, was convicted by a Madison County jury of possession of methamphetamine with the intent to sell and/or deliver, possession of unlawful drug paraphernalia, reckless driving, and driving on a canceled, suspended, or revoked license.  He received an effective ten-year sentence for these convictions, with said sentence to be served consecutively to a prior sentence.  In this appeal, the Defendant argues that the trial court erred by denying his pretrial motion to suppress the evidence discovered during the search of his automobile and that the evidence was insufficient at trial to establish that he possessed the contraband.  Finding no error, we affirm the judgments of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Gregory Gookin, Jackson, Tennessee (at trial), Kenneth L. Davis, Pro Se (on appeal).

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Jerry Woodall, District Attorney General; and Shaun Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

On January 21, 2007, the Defendant was stopped by an officer with the Madison County Sheriff's Department.  The vehicle was searched, and illegal drugs and paraphernalia were discovered inside.  Subsequently, the Defendant was charged with possession of methamphetamine with the intent to sell; possession of methamphetamine with the intent to deliver; possession of drug paraphernalia; reckless driving; and driving on a canceled, suspended, or revoked license.  See Tenn. Code Ann. §§ 39-17-417, 39-17-425, 55-10-205, 55-50-504.  Thereafter, the Defendant filed a

motion to suppress the evidence, claiming that he did not voluntarily consent to the search of his automobile.

A hearing on the motion to suppress was conducted on September 20, 2007. Officer Shane Barnes of the Madison County Sheriff's Department testified that, on January 21, 2007, at approximately 6:45 p.m., he was sitting at a red light at the intersection of North Parkway and Highway 70, located in Madison County. It was dark outside, and "medium traffic conditions" were present in the area. He observed a Ford Ranger pickup truck make a turn at high rate of speed "onto Parkway going westbound from Highway 70."

According to Officer Barnes, the turn was "real noticeable because of the speed and the fact that [the Defendant] went over both lanes of traffic into the turn lane, the opposing lane of traffic." He relayed that the Defendant's vehicle "was speeding in an unsafe condition to make that turn in a proper way." Officer Barnes opined that the Defendant was traveling at forty or fifty miles per hour when he made the turn. Moreover, he described the Defendant's driving as erratic, aggressive, and reckless.

Officer Barnes initiated a traffic stop. Officer Barnes explained to the Defendant that he was checking to see if the Defendant "was impaired or the reason why he made a reckless turn." The Defendant was very cooperative, and Officer Barnes did not smell any alcohol on the Defendant's person. The Defendant had a female passenger, Marilyn Riggs, in the vehicle.

Officer Barnes requested the Defendant's driver's license. Following a check of the license, Officer Barnes learned that the Defendant's license was suspended due to the Defendant's failure to pay child support. Rather than arresting the Defendant, Officer Barnes began issuing a citation and intended on letting the Defendant go. Officer Barnes learned that Ms. Riggs did not have a valid license either. Unwilling to let either individual drive away in the truck, Officer Barnes let the Defendant use his cell phone to have someone come pick them up.

As Officer Barnes "was finishing up the ticket[,]" he asked the Defendant for consent to search the automobile. According to Officer Barnes, the Defendant responded, "Sure. Go ahead. No problem." Officer Barnes waited for another officer to arrive on the scene, which did not take "very long[,]" and he then began searching the vehicle.

Officer Barnes went to the passenger side of the truck, opened the door, and started looking around. He observed a "Game Boy type bag sitting in the middle" between the passenger and the driver. "It was sitting right in the center console." According to Officer Barnes, both individuals would have had access to the bag. Officer Barnes looked inside the bag and discovered approximately 15.9 grams of methamphetamine, six clear glass pipes, one red plastic pipe, a pair of scissors, a white spoon, a small torch, multiple plastic bags of different sizes, a small composition book containing names and phone numbers, and a small metal container. When asked the significance of the items found inside the bag, Officer Barnes stated, based on his experience, that the drugs were for resale.

After discovery of the drugs and paraphernalia, both the Defendant and Ms. Riggs were placed under arrest, and the Metro Narcotics Division was contacted. Neither person claimed ownership of the bag.

On cross-examination, Officer Barnes acknowledged that he did not attempt to get written consent from the Defendant before searching the vehicle. He did not do so because the car was equipped with a video system that recorded traffic stops. However, the audio was not working when Officer Barnes stopped the Defendant, so there was just a video with no sound.

Officer Barnes also stated that he found a small metal vial in Ms. Riggs' possession.

The Defendant testified that Officer Barnes did not request his consent to search his vehicle. Moreover, the Defendant was unaware that his license was suspended. According to the Defendant, Officer Barnes found a metal cylinder under the passenger seat, which "looked like methamphetamines." Officer Barnes asked Ms. Riggs if she was going to claim the cylinder, to which she said no.

On cross-examination, the Defendant acknowledged that he owned the vehicle. He denied that the bag belonged to him.

At the conclusion of the suppression hearing, the trial court determined that the Defendant voluntarily consented to the search of his truck. Thus, the evidence was admissible against the Defendant, and he proceeded to trial.

Officer Barnes provided a similar account of the events at trial. At trial, Officer Barnes further opined that the composition book was a "type of thing commonly used by a drug dealer to keep up with his customers." Officer Barnes also testified that the metal container was found underneath the passenger seat and, in his opinion, appeared to contain methamphetamine. He stated that he observed the container "rolling" when Ms. Riggs exited the vehicle. Officer Barnes further noted that a pill bottle was discovered inside the bag where the drugs were found. Inside the pill bottle was a necklace with a heart charm on it.

The videotape was shown to the jury and admitted as an exhibit. Moreover, testing by the Tennessee Bureau of Investigation confirmed that the two bags discovered during the search of the Defendant's truck contained methamphetamine; 13.8 grams in one bag, and 1.5 grams in the other. No fingerprint analysis was conducted.

The Defendant did not testify at trial or present any evidence in his defense.

Following the conclusion of proof, the jury found the Defendant guilty as charged. The trial court merged the methamphetamine convictions for possession with the intent to sell and possession with the intent to deliver together into a single conviction, and the Defendant received a ten-year sentence as a Range II, multiple offender. He was sentenced to eleven months and twenty-nine days for possession of unlawful drug paraphernalia, six months for driving on a suspended license, and

six months for reckless driving. These sentences were to be served concurrently with one another but consecutively to a prior sentence.

The Defendant now appeals.

## I. Motion to Suppress

On appeal, the Defendant argues that the trial court erred by denying his pretrial motion to suppress the evidence (methamphetamine and drug paraphernalia) found during the search of the Defendant's automobile.[1] Specifically, he claims that he did not voluntarily consent to the search of his truck. The State responds that the search was conducted with the Defendant's consent and was therefore valid.

A warrantless search conducted by state officials is presumed to be unreasonable under the Fourth Amendment to the United States Constitution as well as Article I, section 7 of the Tennessee Constitution, and the resulting evidence is subject to suppression unless the State demonstrates that the search was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. State v. Cox, 171 S.W.3d 174, 179 (Tenn. 2005)). One well-established exception to the warrant requirement exists when the subject of the search consents to it. Id. (citing State v. Bartram, 925 S.W.2d 227, 230 (Tenn. 1996)).

Whether an individual's consent to a search was voluntary and within constitutional boundaries "is a question of fact to be determined from the totality of the circumstances." State v. Scarborough, 201 S.W.3d 607, 623 (Tenn. 2006) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)) (other citation omitted). To "pass constitutional muster, consent to search must be unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." State v. Brown, 836 S.W.2d 530, 547 (Tenn. 1992) (citing Liming v. State, 417 S.W.2d 769, 770 (Tenn. 1967)); see also State v. Simpson, 968 S.W.2d 776, 784 (Tenn. 1998). However, it is not necessary that the officer inform the subject of his right to refuse consent. State v. Vaughn, 144 S.W.3d 391, 403 (Tenn. Crim. App. 2003) (citing United States v. Drayton, 536 U.S. 194, 206 (2002)).

In this case, the trial court denied the Defendant's motion to suppress on the grounds that the initial search had been conducted with the Defendant's consent. Our supreme court instructs us that, "in evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998). When reviewing a trial court's ruling on a motion to suppress, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Findings of fact made by a trial court in ruling on a motion to suppress are binding upon this Court unless the evidence preponderates against the findings. Id. However, "[t]he application of the law to the facts found by the trial court . . . is a

---

[1] A criminal court transcript reflects the trial judge's decision to deny the motion to suppress, although the appellate record contains no entry of an order denying the suppression motion.

question of law which this court reviews de novo." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

Here, Officer Barnes testified that the Defendant consented to having his vehicle searched. Obviously, the trial court found the officer to be a credible witness. The evidence adduced at the hearing on the suppression motion and at the trial supports the trial court's conclusion that the Defendant consented to having his truck searched. The Defendant was cooperative from the start, and he gave his consent without hesitation, replying, "Sure. Go ahead. No problem."

The Defendant also argues that the stop was longer than necessary under the circumstances because the purpose of the traffic stop was completed (issuing a citation) by the time Officer Barnes requested consent to search the Defendant's vehicle. With regard to the period of detention, we agree that the detention must "last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983); State v. England, 19 S.W.3d 762, 767-68 (Tenn. 2000). Moreover, the officer should employ the least intrusive means reasonably available to investigate his or her suspicions in a short period of time. Royer, 460 U.S. at 500. As our supreme court has held, "the proper inquiry is whether during the detention, the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." State v. Simpson, 968 S.W.2d 776, 783 (Tenn. 1998) (citations omitted).

The Defendant cites to State v. Morelock, 851 S.W.2d 838, 840 (Tenn.1992), seemingly for the proposition that, following the issuance of the citation by Officer Barnes, the Defendant's continued custody immediately became unreasonable. The underlying facts of Morelock, however, indicate a "far more coercive atmosphere" than the present case. See State v. Calvin T. Barham, No. W2002-00246-CCA-R3-CD, 2002 WL 31624944, at *4 (Tenn. Crim. App., Jackson, Nov. 19, 2002). In Morelock, the defendant refused to give a police officer consent to open a trunk five times before finally consenting to open it. 851 S.W.2d at 839. In the present case, Officer Barnes asked only once to search the automobile, and the Defendant immediately resounded, "Sure. Go ahead. No problem." The "coercive elements" that were found in Morelock are not found in the instant case, making the Defendant's reliance on this case misplaced. See Barham, 2002 WL 31624944, at *4. Moreover, we note that Officer Barnes testified that, as he "was finishing up the ticket," he inquired if he could search the vehicle. The actual issuance of the citation occurred almost simultaneously with Officer Barnes' request to search. The Defendant's detention was not unreasonable.

We conclude that the trial court did not err in overruling the Defendant's motion to suppress the evidence recovered from his vehicle. The Defendant is not entitled to relief on this issue.

## II. Sufficiency of the Evidence

As his other issue on appeal, the Defendant argues that the evidence was insufficient to support his drug convictions because the proof presented at trial did not establish that he was in

actual or constructive possession of the methamphetamine or drug paraphernalia.[2] Essentially, he submits that police should have conducted further investigation to determine whether he or Ms. Riggs actually possessed the drugs.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

In order to secure the Defendant's convictions, the State had to prove that the Defendant knowingly possessed a controlled substance containing methamphetamine with the intent to deliver and/or sell. See Tenn. Code Ann. § 39-17-417. Additionally, Tennessee Code Annotated § 39-17-425(a)(1) (Unlawful drug paraphernalia uses and activities) provides, in pertinent part, as follows:

it is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this part.

---

[2] He does not challenge his convictions for reckless driving or driving on a revoked, canceled, or suspended license.

Tenn. Code Ann. § 39-17-425(a)(1). At issue here is whether sufficient evidence established that the Defendant possessed the controlled substance and paraphernalia. We disagree with the Defendant's contention that the proof was legally insufficient to establish that he had constructive possession of the methamphetamine and drug paraphernalia recovered from the vehicle he was driving.

Tennessee courts recognize that possession may be either actual or constructive. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). A person constructively possesses a controlled substance or drug paraphernalia when he or she has "the power and intention at a given time to exercise dominion and control over [the contraband] either directly or through others." Id. at 903 (quoting State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997); see also State v. Transou, 928 S.W.2d 949, 956 (Tenn. Crim. App. 1996). Said differently, constructive possession is the "ability to reduce an object to actual possession." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987); see also Transou, 928 S.W.2d at 956. Additionally, "this Court has held 'that a defendant's possession of contraband may be inferred from a defendant's ownership or control over a vehicle in which the contraband is secreted.'" State v. Timothy Tyrone Sanders, No. M2001-02128-CCA-R3-CD, 2002 WL 1465925, at *4 (Tenn. Crim. App., Nashville, July 5, 2002) (quoting State v. James A. Jackson, No. M1998-00035-CCA-R3-CD, 2000 WL 549295, at *11 (Tenn. Crim. App., Nashville, May 5, 2000)); see also State v. Brown, 915 S.W.2d 3, 7-8 (Tenn. Crim. App. 1995).

Applying the inferences from the evidence most favorable to the State, we conclude that the evidence was sufficient to establish that the Defendant constructively possessed the drugs and paraphernalia. While the Defendant suggested that the contraband found in his truck was Ms. Riggs' and not his, it was the jury's prerogative to accredit witness testimony and weigh the evidence. It was undisputed that the Defendant owned the vehicle and that he was in control of the vehicle when the police stopped him. According to the testimony of Officer Barnes, the methamphetamine was recovered from the center of the seat, within arm's reach of the Defendant. He needed only to reach to the middle of the truck he was driving and take the bag of drugs and paraphernalia into his hand in order to be in actual possession of it. In this case, the jury could reasonably infer from the evidence that the Defendant exercised constructive possession of the methamphetamine with the intent to sell and/or deliver it and possession of the drug paraphernalia. Accordingly, we conclude that the evidence was sufficient to sustain the Defendant's convictions.

## CONCLUSION

Based on the foregoing authorities and reasoning, we conclude that the trial court did not err in denying the Defendant's motion to suppress, thereby admitting the evidence discovered during the search of his car. Additionally, we conclude that the evidence was sufficient to support the Defendant's convictions for possession of methamphetamine with the intent to sell and/or deliver and possession of unlawful drug paraphernalia beyond a reasonable doubt. The judgments of the Madison County Circuit Court are affirmed.

_____
DAVID H. WELLES, JUDGE