IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 5, 2012

**STATE OF TENNESSEE v. JONATHAN FREEMAN**

**Direct Appeal from the Circuit Court for Madison County**
**No. 11-49    Roy B. Morgan, Jr., Judge**

_____

**No. W2011-02497-CCA-R3-CD - Filed November 27, 2012**

_____

A Madison County Jury convicted Defendant, Jonathan Freeman, of possession of more than one-half ounce (14.175 grams) of marijuana with intent to sell and possession of more than one-half ounce of marijuana with intent to deliver. Defendant waived his right to a sentencing hearing, the two convictions were merged, and he received an agreed sentence of two years, to serve ten days, and the balance on probation, including sixty hours of community service work. On appeal, Defendant argues that the evidence was insufficient to support his conviction. After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

George Morton Googe, District Public Defender; and Susan Korsnes, Assistant Public Defender, Jackson, Tennessee, for the appellant, Jonathan Freeman.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James G. Woodall, District Attorney General; and Rolf Hazelhurst, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

At approximately 10:24 p.m. on August 30, 2010, Deputy Matthew Sykes was driving north on "the Bypass and Ashport" in Madison County. He stopped at a traffic light and saw a vehicle in front of him driving east on Ashport Road. It appeared that no one in the car was

wearing a seatbelt. Deputy Sykes ran a check on the vehicle's license plate and learned that it was registered to an "antique vehicle." Deputy Sykes turned south behind the vehicle on Highland Avenue and initiated a traffic stop.

Michael Martin was driving the vehicle, Defendant was sitting in the passenger's seat, and Kevin Martin, a juvenile, was sitting in the back seat behind Defendant. Deputy Martin asked for Michael Martin's driver's license, and Mr. Martin indicated that he did not have one. Deputy Sykes asked if anyone else in the vehicle had a license, and Defendant gave his license to Deputy Sykes. Deputy Sykes smelled the odor of marijuana and asked Michael Martin for consent to search the vehicle. Mr. Martin then asked Defendant for consent, and Defendant said no. Deputy Sykes walked back to his patrol car, and Defendant later approached the car and gave Deputy Sykes consent to search.

Deputy Sykes searched the vehicle and found a large bag of marijuana containing eleven smaller bags of marijuana under the seat where Defendant had been sitting. Defendant indicated that the vehicle belonged to him and that he had purchased it from his brother. Deputy Sykes then placed Defendant under arrest and had the vehicle towed to the Criminal Justice Center. The marijuana was taken to the sheriff's office where it was weighed, placed in a sealed evidence bag, and deposited into a locked drop-box. Deputy Sykes testified that the weight of the marijuana and the individual packaging indicated to him that it was possessed for the purpose of sale. Also, he did not find any drug paraphernalia during his search to indicate that the marijuana was for personal use.

Brenda McNeil, an evidence technician with the Jackson-Madison County Metro Narcotics Unit, retrieved the package of marijuana from the drop-box, logged it in, and placed it in the evidence vault. She later transported it to and from the Tennessee Bureau of Investigation (TBI) Crime Lab in Memphis. Special Agent Shalandus Harris of the TBI Crime Lab tested the substance submitted to her in this case and determined that it was 37.3 grams or 1.3 ounces of marijuana.

Sergeant Jackie Benton of the Jackson-Madison County Metro Narcotics Unit testified that she had been an officer for twenty-two years and in narcotics for fifteen years. She had training and experience in everything involved with the drug trade. Sergeant Benton testified that she had been involved in the undercover purchase of marijuana, and she had worked over five-hundred cases involving the drug. Concerning the present case, Sergeant Benton said: "I know it's at least over [a] half ounce, which is felony possession and the way it's packaged it's for resale." She said that multiple packing of marijuana is not for personal use, it is "usually packaged for resale." Sergeant Benton testified that in cases of marijuana for personal use, there is usually the presence of "rolling papers, or hand rolled cigarettes, or

rolling papers for cigars, or some sort of glass pipe, or wooden pipe, or something." She said that nothing in the present case indicated that the marijuana was for personal use.

Defendant testified that he had his brother's car at the time of the offense because his brother was trying to sell the vehicle, and he wanted Defendant to "show it around town" in Jackson. He said that Michael Martin had been driving the car for three or four minutes when Deputy Sykes pulled them over. Defendant testified that Mr. Martin was previously sitting in the front passenger's seat of the car, and Kevin Martin, Michael Martin's brother, was sitting in the back seat.

Defendant denied telling Deputy Sykes that he bought the car from his brother. He said: "I told him that my brother was the owner. And I said my brother was trying to sell it. I didn't tell him all the information." Defendant testified that he did not know there was marijuana in the car. He admitted that he had smoked marijuana in the past. Defendant denied ever selling the drug, and to his knowledge, Michael and Kevin Martin did not sell marijuana.

## II. Analysis

Defendant challenges the sufficiency of the evidence to support the convictions. He argues that the State did not prove that he "intended at any time to exercise 'dominion and control' over the marijuana." When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, and the weight and value to be given the evidence as well as all factual issues raised by the evidence. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Nor may this Court reweigh or re-evaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. *Id*. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of [the] evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

To convict Defendant of possession of marijuana with the intent to sell or deliver, the State had to prove that Defendant knowingly possessed not less than one-half ounce (14.175 grams) nor more than ten pounds (4535 grams) of marijuana with the intent to sell or deliver

it. T.C.A. § 39-17-417(a)(4),(g)(1) (2010). Tennessee courts recognize that possession may be either actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); *see also State v. Bigsby,* 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000). A person constructively possesses a controlled substance when he or she has "'the power and intention at a given time to exercise dominion and control over . . . . [the contraband] either directly or through others.'" *Shaw,* 37 S.W.3d at 903 (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). Said differently, constructive possession is the "'ability to reduce an object to actual possession.'" *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987) (quoting *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981). However, "[t]he mere presence of a person in an area where drugs are discovered is not, alone, sufficient." *Bigsby*, 40 S.W.3d at 90; *see also Cooper*, 736 S.W.2d at 129. "Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs." *Cooper*, 736 S.W.2d at 129. Further, pursuant to Tennessee Code Annotated section 39-17-419, "[i]t may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing."

Viewing the evidence in a light most favorable to the State, the proof showed that Deputy Sykes pulled over a vehicle in which Defendant was a passenger. Defendant told Deputy Sykes that the vehicle belonged to him and that he had purchased it from his brother. When Deputy Sykes asked for permission to search the vehicle, the driver asked Defendant for consent, and Defendant initially said no. He then later approached Deputy Sykes and gave him permission to search. Deputy Sykes searched the vehicle and found a large bag of marijuana containing eleven smaller bags of the drug under the seat where Defendant had been sitting. The substance was later tested and determined to be 37.3 grams or 1.3 ounces of marijuana. Both Deputy Sykes and Sergeant Jackie Benton testified that based on the weight of the marijuana, the individual packaging, and the lack of drug paraphernalia, it appeared that the marijuana was possessed for the purpose of sale. Sergeant Benton testified that nothing in the present case indicated that the marijuana was for personal use.

Although Defendant testified that he did not know that there was marijuana in the car, the jury was free to disbelieve his testimony. It has been repeatedly held that questions about the "credibility of the witnesses, the weight to be given to their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Dotson*, 254 S.W.3d 378, 395 (Tenn. 2008)(citing *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007)); *see State v. Lewter*, 313 S.W.3d 745, 747 (Tenn. 2010); *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

Based on our review of the evidence, we conclude that the evidence was sufficient to support beyond a reasonable doubt Defendant's convictions for possession of more than one-half ounce of marijuana with intent to sell and possession of more than one-half ounce of marijuana with intent to deliver, which were merged into one judgment of conviction. Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE