IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 17, 2024

## STATE OF TENNESSEE v. JONATHAN COLE TREADWAY

**Appeal from the Criminal Court for Cumberland County**
**No. 2022-CR-59     Gary McKenzie, Judge**

**No. E2024-00608-CCA-R3-CD**

FILED

JAN 2 1 2025

Clerk of the Appellate Courts
REc'd By _____

The Defendant, Jonathan Cole Treadway, appeals his jury conviction of possession of a firearm by a convicted felon, for which he received a Range II sentence of eighteen years' incarceration. In this appeal, the Defendant argues that the evidence was insufficient to support his conviction and that the trial court erred in its weighing of the enhancement and mitigating factors during sentencing. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR, SP. J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

Craig P. Fickling, District Public Defender (on appeal); and James N. Hargis, Sparta, Tennessee (at trial), for the appellant, Jonathan Cole Treadway.

Jonathan Skrmetti, Attorney General and Reporter; James E. Gaylord, Senior Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Phillip A. Hatch, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

On April 25, 2022, the Cumberland County Grand Jury returned an indictment against the Defendant, charging him with the possession of a firearm by a convicted felon, a Class B felony. See Tenn. Code Ann. § 39-17-1307(b)(1). The Defendant's case proceeded to a jury trial on March 11, 2023.

A. Trial. Kyla Cook of the Tennessee Department of Corrections Board of Probation and Parole testified that she began working as the Defendant's probation officer on November 21, 2021. She noted that the Defendant had been previously convicted of one count of aggravated robbery, a Class B felony, in December 2012. The Defendant signed a probation order on November 19, 2021, in which he stated that he would reside with his mother, Tina Treadway, in Sparta, Tennessee upon his release from the Hardeman County Correctional Facility.

On December 2, Ms. Cook completed her initial intake with the Defendant in which she reviewed the rules of the Defendant's probation order with the Defendant. During this meeting, the Defendant again provided his mother's address and stated that he would reside with her in Sparta. On December 7, 2021, Ms. Cook, her probation partner, and two law enforcement officers visited the Defendant in Sparta to perform their initial home visit pursuant to the terms of his probation. Upon arriving, Ms. Cook saw the Defendant walking in his front yard and noticed "several shell casings" outside the home. The Defendant allowed Ms. Cook and her party inside, and the Defendant sat at the kitchen table. When asked whether any firearms were present in the home, the Defendant stated that several firearms were in the living room, along with a "box of miscellaneous gun parts."

On cross-examination, Ms. Cook stated that she did not see the Defendant between his release on November 21, 2021, and his initial intake meeting on December 2, 2021. Ms. Cook was not present when the Defendant signed his probation order. Ms. Cook agreed that she did not see the Defendant in physical possession of a firearm.

Cumberland County Sheriff's Office Investigator John Wirey testified that he accompanied Ms. Cook on her visit to the Defendant's mother's residence on December 7, 2021. Upon arriving at the residence, Investigator Wirey saw several .22 caliber shell casings which "spread from the driveway up to the wall of the house" near the door. Investigator Wirey described these shell casings as "fresh" and believed that they had been recently fired. He noted that one of the casings appeared to have been crushed underfoot. Investigator Wirey recalled that when the Defendant was asked whether any firearms were present, the Defendant stated, "Yes, I have them in the living room."

Investigator Wirey found several firearms and a box containing "a Marlin .22 rifle in pieces" in the living room of the residence. Also present were a .38 Special Smith & Wesson revolver with a pearl grip handle in a black nylon holster, a Savage double-barrel .12 gauge shotgun, and a bolt action 7.92 caliber rifle. Investigator Wirey recalled that the revolver and shotgun were in "good shape" and "in working order" but that the 7.92 caliber rifle was "very old" and had been taken apart for cleaning. Investigator Wirey noted that the 7.92 caliber rifle was "labeled with a sticker and scotch tape around the bottom that says J. Treadway." Because the Defendant, as a convicted felon, was prohibited from possessing these firearms, he was placed under arrest, and Investigator

Wirey collected the firearms into evidence. Photographs of the firearms were shown to the jury. Upon the Defendant's booking at the Cumberland County jail, he provided his mother's address as his home residence.

On cross-examination, Investigator Wirey estimated that the Defendant was 100 yards away from his mother's home when Investigator Wirey and Ms. Cook arrived. The Defendant did not have a firearm on his person when he was searched. On redirect examination, Investigator Wirey stated that the Defendant was the only person present at the home when he and Ms. Cook arrived.

The State rested. After a Momon colloquy, the Defendant elected not to testify and did not present additional proof. Upon this evidence, the jury convicted the Defendant as charged.

B. Sentencing Hearing. At the Defendant's July 11, 2023 sentencing hearing, Investigator John Wirey testified that the Defendant was on supervised probation when he was arrested for possession of a firearm by a convicted felon. Investigator Wirey recalled that during his visit to the Defendant's mother's residence, the Defendant argued that he was not on probation and that Ms. Cook presented him with his signed probation order and determinant release certificate.

Tennessee Department of Corrections Officer Charles Stiriz testified that he interviewed the Defendant and completed a presentence investigation report in preparation for the Defendant's sentencing hearing. Officer Stiriz reported that the Defendant had used pain pills and marijuana on a weekly basis prior to March 2023. The Defendant's presentence report detailed his prior criminal history and violations of probation.

The presentence report reflected several prior criminal convictions. In November 2004, the Defendant was granted judicial diversion relating to three drug charges. After violating the terms of his diversion by testing positive for cocaine, the Defendant was convicted of one count of simple possession of marijuana and one count of possession of drug paraphernalia and was sentenced to eleven months and twenty-nine days for each conviction, to be served consecutively. The trial court probated the Defendant's sentence to thirty days to serve, but the Defendant violated the terms of his probation after testing positive for methamphetamine and served the balance of his sentence in confinement. In 2012, the Defendant was convicted of one count of aggravated robbery and one count of aggravated burglary following a jury trial, for which he received an effective sentence of twelve years' incarceration. On July 16, 2021, the Defendant pled guilty to one count of felony evading arrest, for which he received a sentence of one year and six months. The Defendant served a portion of this sentence on probation, the terms of which he violated when he was arrested in this case.

The State argued that given the Defendant's prior convictions of aggravated burglary and aggravated robbery, the Defendant should be sentenced as a Range II multiple offender. Tenn. Code Ann. § 40-35-106(a)(1). The State argued that enhancement factor (1), that the defendant has a previous history of convictions or behavior in addition to those necessary to establish the appropriate range, applied due to the Defendant's prior felony convictions. Tenn. Code Ann. § 40-35-114(1). The State also noted that the Defendant admitted to weekly illegal drug use prior to March of 2023. Further, the State requested that the trial court apply enhancement factor (8), that the defendant before trial or sentencing failed to comply with the conditions involving release into the community, because of the Defendant's March 2022 probation violation. Tenn. Code Ann. § 40-35-114(8). The State also noted that the Defendant had arrived "significantly late" to court on his trial date and that the trial court held the Defendant in contempt of court due to his tardiness. Finally, the State requested that the trial court apply enhancement factor (13), that the defendant committed the offense while released on probation. Tenn. Code Ann. § 40-35-114(13). The State conceded that mitigating factor (1), that the defendant's criminal conduct neither caused nor threatened serious bodily injury, applied, but requested that the trial court not afford it great weight. Tenn. Code Ann. § 40-35-113(1). In consideration of the enhancement and mitigating factors, the State requested that the trial court impose a sentence of eighteen years.

The Defendant requested that he be sentenced as a Range I standard offender, arguing that Code section 40-35-106 did not require the trial court to consider him as a Range II multiple offender. Consequently, the Defendant argued that the appropriate sentence range was between eight and twelve years. Tenn. Code Ann. § 40-35-112(a)(2). The Defendant argued that mitigating factor (1) applied, as the Defendant voluntarily told Investigator Wirey where his firearms were located and generally cooperated with law enforcement. The Defendant also noted that the firearms recovered from his possession included an antique and could have been used recreationally. The Defendant requested that the trial court impose a twelve-year sentence.

The trial court, after considering the evidence received at trial, the presentence report, the purposes and principles of the Sentencing Act, the arguments for alternative sentencing, the nature and characteristics of the criminal conduct, the Defendant's potential for rehabilitation and treatment, the relevant statistical information, and the results of the risks and needs assessment, concluded that the Defendant was a Range II multiple offender. Accordingly, the appropriate range for the Defendant's conviction of a Class B felony was between twelve and twenty years. Tenn. Code Ann. §§ 39-17-1307(b)(1), 40-35-112(b)(2). The trial court applied enhancement factor (1), finding that the Defendant had been previously convicted and violated the terms of his probation on several occasions. The trial court declined to apply enhancement factor (8) but concluded that enhancement factor (13) applied because the Defendant committed his offense while released on probation. The trial court applied "great weight" to enhancement factors (1) and (13). The trial court also applied mitigating factor (1) and found that the Defendant

-4-

had generally cooperated with law enforcement and directed their attention to the firearms and their location, though it noted that it would afford it "little weight." The trial court accordingly imposed a sentence of eighteen years' incarceration.

The Defendant filed a timely but unsuccessful motion for new trial. This timely appeal followed.

## ANALYSIS

On appeal, the Defendant challenges the sufficiency of the convicting evidence and the trial court's weighing of the mitigating factors in fashioning his sentence. The State responds that the evidence was sufficient to support the jury's verdict on a theory of constructive possession and that the trial court did not abuse its discretion in sentencing him to a within-range sentence of eighteen years.

### I. Sufficiency of the Evidence

The Defendant argues that the evidence was insufficient to support his conviction for possession of a firearm by a convicted felon and contends that the State failed to prove either actual or constructive possession. The State responds that the evidence was sufficient based on a theory of constructive possession.

An appellate court's standard of review when a defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence are resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). A guilty verdict "may not be based solely upon conjecture, guess, speculation, or a mere possibility." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]here is no requirement that the State's proof be uncontroverted or perfect." State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 326.

The foregoing standard "applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Both "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." State v. Dorantes, 331 S.W.3d 370, 381 (Tenn. 2011). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

As relevant here, Tennessee Code Annotated section 39-17-1307(b)(1)(A) provides that a person commits an offense "who unlawfully possesses a firearm" and "[h]as been convicted of a felony crime of violence, an attempt to commit a felony crime of violence, or a felony involving use of a deadly weapon." There was no dispute that the Defendant had been previously convicted of aggravated robbery and aggravated burglary under Code sections 39-13-402 and 39-14-403, both of which are felonies involving the use of a deadly weapon.

"Possession may be actual or constructive." State v. Robinson, 400 S.W.3d 529, 534 (Tenn. 2013) (citing State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001)). "[A]ctual possession refers to physical control over an item," while "constructive possession requires only that a defendant have the power and intention . . . to exercise dominion and control over the item allegedly possessed." State v. Fayne, 451 S.W.3d 362, 370 (Tenn. 2014) (quoting Shaw, 37 S.W.3d at 903) (internal quotation marks omitted). Whether a defendant constructively possessed contraband "depends on the totality of the circumstances in each case," and constructive possession "may be proven by circumstantial evidence." Robinson, 400 S.W.3d at 534 (citing Tenn. Code Ann. § 39-17-419).

The Defendant presents a conclusory argument regarding the sufficiency of the convicting evidence, alleging simply that "[t]he evidence introduced at trial was not a sufficient basis upon which to convict [the Defendant] of the charge of possession of a firearm by [a] convicted felon" and that "a close examination of the proof reveals that the State failed to carry [its] burden in establishing that [the Defendant] possessed, either actually or constructively[,] any of the firearms in question." Though the Defendant provides a statement of the law upon which he apparently relies, he also provides no citations to the record in support of his challenge to the sufficiency of the convicting evidence. Thus, the Defendant's argument is waived. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

Waiver notwithstanding, the Defendant is not entitled to relief. Viewed in the light most favorable to the State, the evidence adduced at trial demonstrated that the Defendant, upon his release from the Hardeman County Correctional Facility, began

residing with his mother in Sparta. During an initial home visit, Ms. Cook and Investigator Wirey noticed several spent shell casings strewn about the ground in front of the Defendant's mother's home. When asked whether the Defendant had any firearms in the home, the Defendant responded, "Yes, I have them in the living room." Upon further investigation, Investigator Wirey discovered "a Marlin .22 rifle in pieces," a .38 Special Smith & Wesson revolver with a pearl grip handle in a black nylon holster, a Savage double-barrel .12 gauge shotgun, and a "very old" bolt action 7.92 caliber rifle which was "labeled with a sticker and scotch tape around the bottom that says J. Treadway." The Defendant was the only person present at this mother's home when Ms. Cook and Investigator Treadway paid their visit, and plainly had the power and ability to exercise dominion and control over the firearms. Given the totality of the circumstances, we conclude that the evidence was sufficient to sustain the Defendant's conviction. He is not entitled to relief on this basis.

## II. Length of Sentence

The Defendant also argues that the trial court abused its discretion by imposing an eighteen-year sentence. He argues that the trial court failed to properly consider that "the Defendant was cooperative with both his probation officer and law enforcement during their home visit" and that "none of the firearms were loaded" or "used in the commission of another crime." The State responds that the trial court fully considered this mitigating proof in reducing the Defendant's sentence from twenty years to eighteen years.

Before a trial court imposes a sentence upon a defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). Moreover, appellate courts may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2007). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "[M]ere disagreement with the trial court's weighing of the properly assigned enhancement and mitigating factors" is not a valid ground for appeal. Bise, 380 S.W.3d at 706.

First, we note that the Defendant's argument incorrectly relies upon the pre-Bise standard of review, contending that our review of the trial court's sentencing decision should be *de novo* with a presumption of correctness. The Defendant also challenges the trial court's weighing of the mitigating factors. However, as noted above, the appropriate standard of review for sentencing determinations is under an abuse of discretion standard with a presumption of reasonableness so long as the trial court sentences the defendant within the appropriate range and properly applies the purposes and principles of the Sentencing Act. Bise, 380 S.W.3d at 707. Further, "the 2005 amendments to the 1989 Sentencing Act deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." State v. Scott, No. M2016-02362-CCA-R3-CD, 2018 WL 446203, at *8 (Tenn. Crim. App. Jan. 17, 2018) (citing Carter, 254 S.W.3d at 345) (internal quotation marks omitted).

Here, the trial court specifically stated that it was considering the purposes and principles of the Sentencing Act, the arguments for alternative sentencing, the nature and characteristics of the criminal conduct, the Defendant's potential for rehabilitation and treatment, the relevant statistical information, and the results of the risks and needs assessment in fashioning the Defendant's sentencing pursuant to Code section 40-35-210(b). The trial court placed on the record what enhancement and mitigating factors it considered and properly sentenced the Defendant as a Range II multiple offender within the applicable range of twelve and twenty years. Bise, 380 S.W.3d at 706 n.41; Tenn. Code Ann. §§ 39-17-1307(b)(1), 40-35-112(b)(2). The trial court's sentencing decision thus reflects that it thoroughly considered the purposes and principles of sentencing and imposed a within-range sentence. We will afford it the presumption of reasonableness.

The Defendant's sole challenge to his sentence is that the trial court "failed to appropriately consider" the Defendant's cooperation with law enforcement and that the firearms were neither loaded nor used in the commission of a separate offense as "mitigating factors when it set his sentence." This contention is not supported by the record. The trial court, after concluding that several enhancement factors applied to increase the Defendant's sentence to the maximum of twenty years, determined that the sentence should be reduced by two years because mitigating factor (1), that the Defendant's criminal conduct neither caused nor threatened serious bodily injury, applied. The trial court also noted that the Defendant cooperated with law enforcement and willingly "fess[ed] up and turn[ed] over" his weapons when asked to do so. The Defendant's disagreement with the amount of weight the trial court afforded his mitigating proof does not give this court grounds to reverse his sentence. The record demonstrates that the trial court sentenced the Defendant in accordance with our Sentencing Act. Accordingly, we conclude that the trial court did not abuse its discretion in sentencing the Defendant to a term of eighteen years' incarceration.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., SPECIAL JUDGE